**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **UNITED STATES**<br><br>**v.**<br><br>**ANTONIO BONHEUR** | **Docket No. 26-cr-10059-IT** |

## SENTENCING MEMORANDUM

Born to a family of subsistence farmers in Haiti, Antonio Bonheur came to the United States over 30 years ago in search of a better life.  He settled in Mattapan, where he has lived with his wife in the same modest 2 bedroom apartment in Mattapan for over 30 years.  There, they raised 3 children together.  It was not easy, but he was able to support his family by finding work in a diverse range of fields: delivering newspapers, housekeeping at an assisted living center, driving a cab, cooking at a small family restaurant.  Although they were far from wealthy, Mr. Bonheur and his wife marveled at their good fortune in having made it to the United States, where opportunities exist for immigrants to carve out a life.  He had no troubles with the law whatsoever and in 2014 became a naturalized United States citizen.

Several years ago, Mr. Bonheur used his modest savings to open a small convenience store in Mattapan Square.  The store stocked food and other items of interest to the area's sizable Haitian-American community.  Due to the prevalence of customers seeking to use SNAP benefits, Mr. Bonheur applied to the U.S.D.A. for authorization to accept them.  He became a SNAP authorized retailer in 2021.  Though his thinking at the time was simply that accepting SNAP benefits would result in a higher volume of sales, there were consequences he failed to appreciate.  Mr. Bonheur soon learned that some customers seeking to use SNAP benefits would petition him

1

to use SNAP benefits for ineligible items or to conduct fraudulent SNAP redemptions in return for cash. To his great shame, Mr. Bonheur did not resist these overtures and developed a practice of exchanging cash for fictitious SNAP benefits redemptions, typically keeping approximately 20% of the profits (with the other 80% going to the SNAP benefits holder).

Word got around and Mr. Bonheur's store was soon overrun with SNAP card holders seeking to monetize their benefits, eventually producing monthly SNAP redemptions totaling hundreds of thousands of dollars. The sheer volume of SNAP redemptions taking place at his small store rightfully aroused the suspicions of investigators, leading to an investigation and Mr. Bonheur's arrest in December 2025. Almost immediately thereafter, Mr. Bonheur informed the government that he wished to accept responsibility for his conduct, resulting in his guilty plea to an information charging him with one count of the unauthorized use, transfer, acquisition, alteration, or possession of SNAP benefits in excess of $5000 and one count of wire fraud. Under his plea agreement, Mr. Bonheur not only agreed to plead guilty but further agreed to the forfeiture of approximately $400,000 in assets—essentially leaving him penniless at an age when his productive working years are long behind him.

The remaining question for the Court is this: what is the minimum sentence that will be "sufficient, but not greater than necessary" to accomplish the goals of sentencing as set forth under 18 U.S.C. § 3553(a)? Mr. Bonheur is now 75 years old. He is diabetic and also carries diagnoses of hypertension and hypercholesterolemia. *See Mattapan Community Health Center Letter.* In view of his age, medical condition, and his status as a first-time offender, the defense seeks a non-custodial sentence substituting home confinement for a period of incarceration. For the reasons that follow, such a sentence would strike an appropriate balance between sentencing factors enumerated at 18 U.S.C. § 3553(a).

Application of Sentencing Guidelines

The court must "begin sentencing proceedings by correctly calculating the applicable Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Here, there is no dispute in the guideline calculation; the presentence report's calculation mirrors that of the parties in the plea agreement. The base offense level under USSG § 2B1.1 is 7. Due to the loss amount, the offense level is increased by 18. After accounting for a three level reduction in the offense level due to Mr. Bonheur's acceptance of responsibility under § 3E1.1, and an additional two level reduction under §4C1.1 due to his status as a Zero Point offender, the total offense level is 20. Mr. Bonheur falls into criminal history category I. As such, the applicable guideline sentencing range is 33-41 months. PSR ¶ 132.

Argument

In fashioning a fair and just sentence, the Court must consider the factors enumerated in 18 U.S.C. § 3553(a) and balance competing considerations. To be sure, Mr. Bonheur's crimes are serious and deserving of punishment. Mr. Bonheur took advantage of a benefits program intended to ensure that qualifying individuals maintain access to food. Instead, he used that program to enrich himself. He did so repeatedly, over the course of several years, and in so doing caused an enormous financial loss to the government. Mr. Bonheur does not make excuses for himself. What he did was wrong and he is deeply ashamed.

At the same time, Mr. Bonheur is a first-time offender who is 75 years old. He has been diagnosed with diabetes, hypertension, and hypercholesterolemia, which require daily medication. The offense conduct here appears aberrational, insofar as Mr. Bonheur has had no other contacts with the criminal justice system in the 30 plus years he has made this country his

home.  He no longer operates the convenience store and poses no danger to the public.  His age,

life circumstances, and quick acceptance of responsibility all suggest that he is at low risk for

recidivism and that a prison sentence is not needed to deter him from committing other crimes.

All in all, a sentence substituting a period of home confinement in place of imprisonment is a

reasonable approach given the nature of this offense and this offender.

Respectfully submitted,

*/s/ Scott Lauer*
Scott Lauer (BBO #667807)
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
scott_lauer@fd.org

## CERTIFICATE OF SERVICE

I, Scott Lauer, hereby certify that this document(s) and accompanying exhibits filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 3, 2026.  A copy will also be sent via email to U.S. Probation Officer Crystal Monteiro.

*/s/ Scott Lauer*
Scott Lauer